IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CENTER FOR BIOLOGICAL DIVERSITY,
a non-profit organization, PETER GALVIN,
an individual, ROSE BRAZ, an individual,

Plaintiffs,

v.

DIRK KEMPTHORNE, Secretary of the
Interior, U.S. Department of the Interior,
and DALE HALL, Director, U.S. Fish and
Wildlife Service,

Defendants.

No. C 06-07117 WHA

**ORDER GRANTING IN PART
AND DENYING IN PART
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AND
GRANTING IN PART AND
DENYING IN PART
DEFENDANTS' CROSS-MOTION
FOR SUMMARY JUDGMENT**

**INTRODUCTION**

The Center for Biological Diversity and individuals seek declaratory and injunctive relief against Dirk Kempthorne, Secretary of the United States Department of Interior, and its Fish and Wildlife Service to list certain foreign bird and butterfly species on the foreign endangered species list pursuant to the Endangered Species Act. For the reasons stated below, plaintiffs' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART** and defendants' cross-motion for summary judgement is **GRANTED IN PART AND DENIED IN PART.**

**STATEMENT**

The United States has taken on an active role in the conservation of endangered species on an international level. As the Endangered Species Act declares, "the United States has

pledged itself as a sovereign state in the international community to conserve to the extent practicable the various species of fish or wildlife facing extinction . . . pursuant to the Convention on International Trade in Endangered Species of Wild Fauna and Flora" and other international agreements. 16 U.S.C. 1531(a)(4)(F). The relevant petitions, received by the Service in 1980, 1991, and 1994, involve the listing of 56 foreign bird and butterfly species. More specifically, in 1980, the International Council for Bird Preservation petitioned to list 58 foreign bird species as threatened or endangered under the ESA (AR 4–9). As a result of an amendment by Congress to the ESA incorporating additional requirements to list species, petitions pending at the time of the amendment were then treated as if resubmitted on the effective date of the amendment, October 13, 1982. H.R. Rep. No. 97-835, at 19–20 (1982). On January 20, 1984, a finding of "warranted but precluded" was made for the 58 foreign bird species petitioned for in 1980 (49 Fed. Reg. 2485).

The Service issued proposed and final rules listing six of the 58 birds as endangered in 1990 (55 Fed. Reg. 39848). In the following year, 1991, the Service received a second petition from the ICBP to list an additional 53 foreign bird species under the ESA (AR 72–73). In 1994, the Service issued a finding proposing to list thirty species (fifteen from the 1980 petition and fifteen from the 1991 petition) and a finding of "warranted but precluded" for the remaining foreign bird species petitioned for in 1980 and 1991 (59 Fed. Reg. 14496). The Service finalized the listing for the thirty foreign bird species the following year (60 Fed. Reg. 2899).

The Service received the third petition at issue to list seven foreign swallowtail butterflies as threatened or endangered under the ESA in 1994 (59 Fed. Reg. 24117). On May 21, 2004, the Service issued a new finding on the "warranted but precluded" birds, determining that of the remaining 73 foreign birds, 51 continued to warrant listing but were precluded by higher-priority listing actions, eleven were removed because they were found to be extinct, seven were removed because they did not meet the criteria for listing, and five were found to warrant listing (69 Fed. Reg. 19354). In December 2004, the Service issued a finding of "warranted but precluded" for the seven butterflies petitioned for in 1994 (69 Fed. Reg. 70580).

As of November 16, 2006, the Service had failed to issue: (a) proposed rules for the five foreign bird species it had determined were warranted in 2004; (b) its annual findings scheduled for May 2005 regarding the 51 "warranted but precluded" birds from May 2004; and (c) its annual findings scheduled for December 2005 regarding the seven "warranted but precluded" butterfly species from December 2004. This action followed. Subsequently, the Service issued proposed listing rules for the five warranted birds from 2004, and pursuant to an agreement between the parties entered as a case management order, the Service agreed to issue the twelve-month filing for the "warranted but precluded" bird and butterfly species by April 2007. The new finding, issued on April 23, 2007, found that six species warranted listing, but continued to maintain that fifty species were "warranted but precluded" (72 Fed. Reg. 20184). The April 23 finding is summarized below (within "listing priority" numbers):

**Warranted-But-Precluded Species from 1980 Petition**

1. Cauca guan [Colombia] (LPN 2)
2. Cantabrian capercaillie [Spain] (LPN 3)
3. Gorgeted wood-quail [Colombia] (LPN 2)
4. Takahe [New Zealand] (LPN 8)
5. Chatham Island oystercatcher [Chatham Islands] (LPN 8)
6. Marquesan imperial-pigeon [Marquesas Islands] (LPN 2)
7. Orange-fronted parakeet [New Zealand] (LPN 4)
8. Uvea parakeet [New Caledonia] (LPN 8)
9. Southeastern rufous-vented ground cuckoo [Brazil] (LPN 3)
10. Chilean woodstar [Peru, Chile] (LPN 2)
11. Margaretta's hermit [Brazil] (LPN 3)
12. Okinawa woodpecker [Okinawa] (LPN 7)
13. Black-hooded antwren [Brazil] (LPN 2)
14. Fringe-backed fire-eye [Brazil] (LPN 2)
15. St. Lucia forest thrush [St. Lucia] (LPN 3)
16. Eiao Polynesian warbler [Marquesas Islands] (LPN 3)
17. Codfish Island fernbird [New Zealand] (LPN 9)
18. Gizo white-eye [Solomon Islands] (LPN 8)
19. Cherry-throated tanager [Brazil] (LPN 2)
20. Lord Howe currawong [Lord Howe Island] (LPN 12)

**Warranted-But-Precluded Species from 1991 Petition**

21. Junin flightless grebe [Peru] (LPN 2)
22. Greater adjutant stork [S.E. Asia] (LPN 2)
23. Andean flamingo [South America] (LPN 2)
24. Brazilian merganser [South America] (LPN 2)
25. Southern helmeted curassow [Peru, Bolivia] (LPN 8)
26. Blue-billed curassow [Colombia] (LPN 2)
27. Bogota rail [Colombia] (LPN 8)
28. Junin rail [Peru] (LPN 2)
29. Jerdon's courser [India] (LPN 2)

| | | |
|---|---|---|
| 30. | Slender-billed curlew [Eurasia] (LPN 2) | |
| 31. | Salmon-crested cockatoo [Indonesia] (LPN 2) | |
| 32. | Blue-throated macaw [Bolivia] (LPN 8) | |
| 33. | Black-breasted puffleg [Ecuador] (LPN 2) | |
| 34. | Esmeraldas woodstar [Ecuador] (LPN 2) | |
| 35. | Yellow-browed Toucanet [Peru] (LPN 11) | |
| 36. | Helmeted woodpecker [South America] (LPN 8) | |
| 37. | Royal cinclodes [Peru, Bolivia] (LPN 2) | |
| 38. | White-browed tit-spinetail [Peru] (LPN 2) | |
| 39. | Brown-banded antpitta [Colombia] (LPN 2) | |
| 40. | Brasilia tapaculo [Brazil] (LPN 8) | |
| 41. | Kaempfer's tody-tyrant [Brazil] (LPN 2) | |
| 42. | Ash-breasted tit-tyrant [Peru, Bolivia] (LPN 2) | |
| 43. | Peruvian plantcutter [Peru] (LPN 2) | |
| 44. | Medium tree-finch [Ecuador] (LPN 11) | |
| 45. | Black-backed tanager [Brazil] (LPN 8) | |

**Warranted-But-Precluded Species from 1994 Petition**

46. Harris' mimic swallowtail [Brazil, Paraguay] (LPN 12)
47. Jamaican kite swallowtail [Jamaica] (LPN 8)
48. Fluminese swallowtail [Brazil] (LPN 5)
49. Hahnel's Amazonian swallowtail [Brazil] (LPN 11)
50. Kaiser-I-Hind swallowtail [East Asia] (LPN 8)

**2007 Warranted Species**

1. Fiji petrel
2. Chatham petrel
3. Cook's petrel
4. Galapagos petrel
5. Magenta petrel
6. Heinroth's shearwater

Plaintiffs now seek declaratory and injunctive relief to compel defendants to issue proposed rules for each of the species it has determined is "warranted but precluded." In addition, in their motion for summary judgment, plaintiffs move to compel the Service to issue proposed listing rules for the six species that were determined to warrant a listing in 2007. Since filing the motion, however, the proposed and final rules for the six species have been issued by the Service. Defendants cross-motion for summary judgment challenges the standing of plaintiffs.

## ANALYSIS

**1.   THE ESA.**

Congress passed the Endangered Species Act in 1973 to protect species of plants and animals endangered or threatened with extinction. The purpose of the ESA is "to provide a means whereby the ecosystems upon which endangered and threatened species depend may be

4

conserved, [and] to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. 1531(b). Under Section 4 of the ESA, the Secretary of Interior is generally responsible for determining which species, both domestic and foreign, should be listed as endangered or threatened. 16 U.S.C. 1533(a)(1).

The ESA permits interested persons to petition the Secretary to add or remove species from the threatened and endangered species lists. 16 U.S.C. 1533(b)(3). Within twelve months after receiving a petition that presents substantial information indicating the petition action may be warranted, the Service must make one of the following findings: (i) the petitioned action is actually not warranted; (ii) the petitioned action is warranted in which case the Secretary shall "promptly" published a proposed regulation; or (iii) the petitioned action is warranted but "the immediate proposal and timely promulgation of a final regulation implementing the petitioned action . . . is precluded by pending proposals to determine whether any species is an endangered species or a threatened species," and "expeditious progress is being made to add qualified species" to the list "in which case the Service shall promptly publish such finding in the Federal Register, together with a description and evaluation of the reasons and data on which such finding is based." 16 U.S.C. 1533(b)(3)(B).

The ESA provides that if the Service makes a "warranted but precluded" finding, the petition must "be treated as a petition that is resubmitted to the [Service] on the date of such finding," meaning the Service must make a new determination within one year as to whether the species should be listed, not listed, or continue to remain on the "warranted but precluded" list. 16 U.S.C. 1533(b)(3)(C)(ii). All "warranted but precluded" findings are subject to judicial review. 16 U.S.C. 1533(b)(3)(C)(ii). The ESA further directs the Service to "implement a system to monitor effectively the status of all species" subject to warranted-but-precluded findings and to make prompt use of its emergency listing authority "to prevent a significant risk to the well being of any such species." 16 U.S.C. 1533(b)(3)(C)(iii). Each candidate species is given a listing priority number according to: (a) the magnitude of threats they face; (b) the immediacy of these threats, and (c) the taxonomic distinctiveness of the entity that may be listed

(48 Fed. Reg. 43,098). Listing priority numbers range from 1 (highest priority) to 12 (lowest priority).

Section 11 of the ESA provides that "any person may commence a civil suit on his own behalf . . . against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under [Section 4] which is not discretionary with the Secretary." 16 U.S.C. 1540(g)(1), referring to 16 U.S.C. 1533. The federal district courts have jurisdiction under such suits to order the Secretary to perform any of the duties specified in Section 4. 16 U.S.C. 1540(g)(1).

### 2. LEGAL STANDARD.

Under FRCP 56(c), summary judgment shall be rendered if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Summary judgment is not granted if the dispute about a material fact is "genuine" — that is, if the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party. The evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Because the ESA does not contain its own internal standard of review, judicial review of ESA citizen suits may only set aside the agency action, as set forth in Administrative Procedure Act, if the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." "The task of the reviewing court is to apply the appropriate APA standard of review . . . to the agency decision based on the record the agency presents to the reviewing court." While the district court must make a detailed inquiry into whether the administrative action was based on the relevant facts, it may not set aside agency action as arbitrary or capricious unless there is no rational basis for the action. *Friends of the Earth v. Hintz*, 800 F.2d 822, 831 (9th Cir. 1986).

### 3. STANDING.

Defendants contend that plaintiffs lack standing to bring this action. Specifically, defendants challenge whether plaintiffs have shown an "injury in fact" to warrant jurisdiction. As defendants maintain, in order for plaintiffs to meet the "injury in fact" requirement to

6

standing they must show previous use or visitation of the area inhabited by each species *and* concrete plans to return to those areas. In *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–64 (1992), the Supreme Court directly considered the standing requirements for a plaintiff to challenge a rule promulgated under the ESA. In *Lujan*, when asked if she planned to return to the habitat in question at her deposition, plaintiff responded "I intend to go back," but confessed that she did not know when, only maintaining that she would go "[i]n the future." In finding that the plaintiffs lacked standing to bring the action, the Supreme Court held (*id.* at 562–64)[*] :

> Of course, the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing. But the "injury in fact" test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured. To survive the Secretary's summary judgment motion, respondents had to submit affidavits or other evidence showing, through specific facts, not only that listed species were in fact being threatened by funded activities abroad, but also that one or more of respondents' members would thereby be "directly" affected apart from their "special interest" in th[e] subject. . . Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects. And the affiants' profession of an "inten[t]" to return to the places they had visited before — where they will presumably, this time, be deprived of the opportunity to observe animals of the endangered species — is simply not enough. Such "some day" intentions — without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the "actual or imminent" injury that our cases require.

Contrary to defendants, nowhere in *Lujan* is there a requirement that a plaintiff allege past visitation *and* concrete plans to return. *Lujan* does hold that an allegation of prior use, in and of itself, is not enough to confer standing upon a plaintiff. Future or imminent harm, however, may be enough to establish standing if such harm is concrete and cognizable. As the Ninth Circuit has held, "potential injury may be sufficient to confer standing." *Regents of University of California v. Shalala*, 82 F.3d 291, 298 (9th Cir. 1996).

In the present action, the future or imminent harm must be evidenced by concrete plans of an intention to visit the particular habitat for the species. Contrary to plaintiffs, *Japan Whaling Association v. American Cetacean Society*, 478 U.S. 221 (1986), does not support the

---

[*] Unless otherwise stated, all internal quotes are omitted from quotations used in this order.

7

idea that anyone who has an interest in a certain animal (no matter where that animal may be) has standing. In *Japan Whaling*, the Supreme Court found that a whale-watching society had standing because "whale watching and studying of the members [would] be adversely affected by whale harvesting." In *Lujan*, however, the Supreme Court made clear that standing only had been established in *Japan Whaling* because "plaintiff was a citizens' council *for the area* in which the challenged construction was to occur, so that its members would obviously be concretely affected." *Lujan*, 504 U.S. at 573 n.8 (emphasis added). *Here, all of the species at issue are located in foreign, overseas areas where plaintiffs do not reside.* Plaintiffs can thus not qualify for standing on the grounds that they have an aesthetic interest in a foreign species without "a factual showing of perceptible harm." *Id*. at 565.

Applying the *Lujan* standing requirements to the present record, plaintiffs only meet the standing requirements for six of the species involved in this action. Plaintiffs lack standing for those species in which they have provided no description of a concrete plan evidencing a future trip to the habitats in question. The high number of species involved in this action break down into the following groups for standing purposes.

*First*, for many of the species in question plaintiffs have alleged a mere hope to one day observe the species in its foreign habitat. For instance, in the declaration of Rose Braz, she stated:

> I hope to be able to return to Okinawa and again see these birds in their natural habitat . . . Many of the other birds I still hope to see are likewise critically imperiled . . . I plan to continue to travel around the world to observe rare and endangered birds, and I, like many an obsessive birder, would like to see in my lifetime as many birds as possible, including the birds that are the subject of this case . . . I plan to travel to South America where I hope to observe species . . . (Braz Decl. ¶¶ 7–10).

As cl held by *Lujan*, such some-day intentions unsupported by any concrete evidence are not enough to confer standing. Accordingly, plaintiffs have not met the standing requirements for the following species (for which similar vague statements of intention have been made):

- Cantabrian capercaillie
- Marquesan imperial-pigeon
- Uvea parakeet
- Eiao Polynesian warbler
- Gizo white-eye

8

- Greater adjutant stork
- Jerdon's courser
- Jamaican kite swallowtail
- Heinroth's shearwater
- Blue-throated macaw
- Salmon-crested cockatoo
- Black-hooded antwren

*Second*, for many of the species in question, some plaintiffs have made statements that are not as vague as "I hope," but are still not concrete enough. These statements indicate a desire to visit the relevant species' habitats and give general time frames (*e.g.*, summer 2008 or July of 2009). For instance, in the declaration of Kassia Siegel he stated, "I plan to return to Lord Howe Island in early 2009 to once again attempt to view the Lord Howe currawong and enjoy its very special habitat" (Siegel Decl. ¶ 9). Defendants contend that such statements are not concrete enough to establish the necessary requirements for standing and that something beyond a mere speculation of a general time frame (*e.g.*, hotel reservations or plane tickets) is needed to show the necessary "injury in fact" requirement of standing. This order agrees.

Although it does not appear that the Supreme Court or Ninth Circuit has directly addressed this issue, plaintiffs primarily rely on *Lockyer v. U.S. Dept. of Agriculture*, 459 F. Supp. 2d 874, 885 (N.D. Cal. 2006), where the district court held:

> Plaintiffs have satisfied [the standing requirements] here. Both the Environmental Plaintiffs and the State Plaintiffs have shown their concrete interest by submitting numerous declarations from organizational members and State officials regarding their geographic proximity to areas that will be affected by changed roadless area policies. *See, e.g.*, Declaration of Jonathan Oppenheimer ¶ 19 ("Specifically, during the summer of 2006, I intend to visit the Mallard-Larkins Roadless Area . . ."; Declaration of Erik Molvar ¶ 11 ("This coming summer I and my children plan to visit the Snowy Ridge and Libby Flats Roadless Areas as well as Roadless Areas in Colorado and Washington.")

The facts in *Lockyer*, however, differ from those presented on the current record. In *Lockyer*, the species and habitats involved were all *domestic*. Here, the species and habitats involved are all *foreign*. In terms of concreteness, it is one thing for an American to plan to visit Colorado early next year, but entirely different for an American to plan to visit Lord Howe Island. The sheer distance and remoteness relative to the United States and the amount of effort required to organize such a trip is significant. Given we are concerned with rare species, there is also

9

uncertainty associated with possible animal restrictions and access provisions that may have been put in place by foreign governments and agencies. While such restrictions and provisions have not been detailed on the record, getting into a foreign country to see these foreign species seems harder than plaintiffs assume. In such circumstances, this order finds it much more prudent to require a plaintiff to go beyond vague time frames. It is not necessary to confirm a specific itinerary, but more must be shown than generalized plans for the future, at least when it comes to overseas remote locations, possibly restricted in access due to the rare status of the birds and butterflies. Accordingly, plaintiffs have also not met the standing requirements for the following species (for which similar statements of intention have been made):

- Fiji petrel
- Chatham Island petrel
- Okinawa woodpecker
- Magenta petrel
- Chatham Island oystercatcher
- Cook's petrel
- Codfish Island fernbird
- Takahe
- Orange-fronted parakeet
- Peruvian plantcutter
- Junin flightless grebe
- Southern helmeted curassow
- Junin rail
- Yellow-browed toucanet
- Royal cinclodes
- White-browed tit-spinetail
- Ash-breasted tit-tyrant
- Esmeraldas woodstar
- Cherry-throated tanager
- Brasilia tapaculo
- Brazilian merganser
- Helmeted woodpecker
- Kaempfer's tody-tyrant
- Slender-billed curlew
- Mimic swallowtail
- Fringe-backed fire-eye
- Margaretta's hermit
- Black-backed tanager
- Fluminese swallowtail
- Hahnel's Amazonian swallowtail
- Southeastern rufous-vented ground cuckoo
- Cauca guan
- Brown-banded antpitta
- Bogota rail
- Blue-billed curassow
- Gorgeted wood-quail
- Lord Howe currawong
- Kaiser-I-Hind swallowtail

*Third*, plaintiff Alvaro Jaramillo has established standing for the Chilean woodstar, Andean flamingo, Galapagos petrel (which has already been listed), medium treefinch, black-breasted puffleg, and St. Lucia forest thrush. In his declaration, Jaramillo provided concrete plans to lead guided tours to the habitats for these species by way of a detailed itinerary including specific dates of travel (Jaramillo Decl. Exh. 1). Contrary to defendants contention that plaintiffs did not allege standing at the time the complaint was filed, plaintiffs have alleged standing for every species involved since the filing of the action. Absent any evidence indicating otherwise, plaintiffs have met their burden showing that Jaramillo had standing at the time the complaint was filed.

\* \* \*

Plaintiffs contend that establishing standing for any given species confers standing for not only that species but for *all* species with a higher listing priority number. Plaintiffs argue that in order for a lower priority species to ultimately be listed, all species with a higher priority must be listed first, and thus, standing for the lower priority species necessarily implies standing for all those above it. This order refuses to adopt plaintiffs' expansive of standing. Under plaintiffs' flawed reasoning, if a plaintiff were to establish standing for a species with the lowest possible priority number (*i.e.*, with the lowest threat of endangerment), he or she would automatically have standing for all those species with higher priority numbers (*i.e.*, with the highest threat of endangerment).

### 4. "WARRANTED BUT PRECLUDED" SPECIES.

Plaintiffs argue that defendants have failed to make "expeditious progress" or demonstrate that the listing of the "warranted but precluded" species are precluded by other pending listing proposals. As the Ninth Circuit held in *Center for Biological Diversity v. Kempthorne*, 466 F.3d 1098, 1102 (9th Cir. 2006):

> [T]he circumstances under which the Secretary may invoke the excuse of warranted but precluded are narrowly defined. Implementing the petitioned action . . . must be precluded by pending proposals *and* expeditious progress must be being made to list qualified species and delist those for whom ESA's protections are no longer necessary. . . [T]he Service must show that it is actively working on other listings and delistings and must determine and publish a finding that such work has resulted in

11

> pending proposals which actually preclude proposing the
> petitioned action at that time, and must determine and present
> evidence that [it] is, in fact, making, expeditious progress in the
> process of listing and delisting other species.

Defendants contend that they have made expeditious progress to list qualified species and delist others between 2004 to 2007 (the relevant years in question) as evidenced through the following actions: (1) publication of a twelve-month finding on a petition to list seven butterfly species; (2) publication of a twelve-month finding and proposed rule delisting the Mexican bobcat; (3) a final rule listing the Tibetan antelope as endangered; (4) a ninety-day finding on a petition to delist the Morelet's crocodile; (5) a proposed listing rule for six species of foreign birds, for which listing was found to be warranted in the 2004 notice; (6) a special rule regulating trade in beluga sturgeon, listed as threatened, and its caviar; and (7) a management rule for captivebred members of three African antelope species, all listed as endangered (Saito Decl. ¶ 27). This order disagrees.

*First*, defendants' publication of the twelve-month finding on the petition to list seven butterfly species was ultimately a "warranted but precluded" finding. If the Service could use such findings to show expeditious progress towards listing qualified species, every species could potentially be found to be precluded due to the backlog of petitions in the Service. *Second*, while the relevant period of showing expeditious progress is between 2004 (the year the "warranted but precluded" findings were made) to 2007, it is difficult to ignore the fact that some of the species for which plaintiffs have standing for are related to petitions that date as far back as 1980, over 25 years ago. If the Service were allowed to continue at its current rate, it is hard to imagine anytime in the near or distant future when these species will be entitled to listing. Such delay hardly qualifies as "expeditious progress" and conflicts with the purpose of the ESA to provide "prompt action upon receipt of a petition to list species if the petition presents substantial scientific evidence that the species is endangered or threatened." H.R. Rep. No. 97-567 at 12 (1982). *Third*, as admitted by defendants, listing action of *any kind* (including "warranted but precluded" findings and delistings) has only occurred for a total of twenty species in the past three years. The number of species that were *actually listed* in the foreign endangered list in the past three years is four. In light of the Service's own initiative to list 29 species in

2008, it is difficult to see how such activity qualifies as "expeditious progress" by the Service. "[T]he legislative history of the ESA and its subsequent amendments demonstrate [that] Congress from the outset recognized that timeliness in the listing process is essential." *Center for Biological Diversity v. Norton*, 254 F.3d 833, 839 (9th Cir. 2001). If defendants were allowed to continue at such a pace, many of the species in question may very well be extinct by the time they are found to warrant a listing.

Defendants further contend that the Service is making expeditious progress "despite its limited staff and resources" (Reply Br. 7). The Ninth Circuit in *Center for Biological Diversity v. Norton*, 304 F. Supp. 2d 1174, 1179–80 (9th Cir. 2003), however, has already rejected similar arguments made by the Service:

> As other district courts within this Circuit have noted, to the extent the [Service] feels aggrieved by Congress' failure to allocate proper resources in which to comply with [its] statutory duty, Congress, not the courts, is the proper governmental body to provide relief. Put another way, [t]he solution of being over-obligated and under-funded rests with Congress, and not with the Court. . . [T]he mandatory language of the ESA does not support [D]efendant['s] suggestion that the ESA allows the Secretary to comply with statutory duties at his or her convenience, or that a heavy workload of the agency may excuse compliance.

The Service's inability to meet the statutory requirements of the ESA as a result of the lack of allocated resources *is not* a cognizable concern. Congress has directed that ESA protection be given to endangered species. As such, plaintiffs' motion for summary judgment as to the "warranted but precluded" species for which it has standing must be **GRANTED**.

In the event that plaintiffs' motion for summary judgment is granted, defendants have submitted a proposed schedule to list the "warranted but precluded" species at issue. The proposal takes significant steps in actively listing the species in question within a reasonable time and, with a few modifications, will be adopted. Defendants will undertake to list every species with a listing priority of two or three by the end of 2008. Defendants schedule proposes a listing of all the remaining species at issue between 2010 and 2012. Now that many of the species at issue have been removed from this action, however, defendants will be under no obligation to list the species for which the standing requirements have not been met.

1 Defendants should thus be able to issue proposed listing rules for all the species for which
2 standing has been established by the end of 2008 and are hereby ordered to do so.

### 5. PROMPT ISSUING FOR "WARRANTED" SPECIES.

In their opening brief, plaintiffs contended that defendants violated Section 4 of the ESA by its failure to "promptly" issue proposed rules for the seven species that were found to warrant a listing in April 2007. Since their opening brief, the proposed and final listing for the seven species has been made (72 Fed. Reg. 71298). As such, defendants contend that plaintiffs' claim for failing to promptly issue the proposed rule is now moot because there is no longer a case or controversy. Plaintiffs maintain that their claim is not moot because the "voluntary cessation" exception applied.

Mere voluntary cessation of allegedly illegal conduct does not moot a case. In order for the exception to apply, however, "the defendant's voluntary cessation must have arisen *because* of the litigation." *Public Utilities Com'n of State of Cal. v. F.E.R.C.*, 100 F.3d 1451, 1460 (9th Cir. 1996). Plaintiffs have offered no support in the record to show that the Service made the proposed listing rules as a result of this litigation. In fact, the record shows that the Service had been working on preparing initial drafts of the proposed rules in September 2006, a few months before this suit was filed.

At the hearing, plaintiffs raised the "capable of repetition, but evading review" exception to the mootness doctrine. It does not apply. "A case or controversy remains if the Service's allegedly wrongful delay is capable of repetition but evading." The exception only applies where (1) the duration of the challenged action is too short to allow full litigation before it ceases, and (2) there is a reasonable expectation that the plaintiffs will be subjected to it again. *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1173 (9th Cir. 2002). These requirements are absent. By plaintiffs' own admission, we have no pattern of the agency consistently issuing a listing proposal to moot out litigation.

### CONCLUSION

For the above-stated reasons, defendants shall make a listing as outlined above for the bird and butterfly species for which plaintiffs have standing. Proposed listing rules must be

14

issued for the Chilean woodstar, Andean flamingo, medium treefinch, black-breasted puffleg, and St. Lucia forest thrush by the end of 2008. In the Court's view, this disposes of the matter entirely, however, if the parties believe otherwise, they must file notice with the Court by **JANUARY 28, 2008, AT NOON**.

**IT IS SO ORDERED.**

Dated: January 23, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE